88   155
s88   163
88   155
92   195
88   155
96   472

LUCIUS L. MORRISON, and another,

*vs.*

FIRST NATIONAL BANK OF SKOWHEGAN.

Somerset.    Opinion June 19, 1895.

*Deed.    Description.    Easement.    High-water mark.    Shore.*

A deed of real estate contained this clause: "Saving and reserving from this conveyance, that said Dyers [the grantees] are not to have the right of erecting a building within five feet from the easterly line and within twenty-five feet from my store, and that said five feet is to be forever reserved for a passageway back in common with themselves and others." The description of the granted premises included the strip. *Held;* that the deed conveyed the fee of the five-foot strip and reserved merely an easement.

The term "high-water mark," when applied to a non-tidal river, means the highest limit reached by the the water when the river is unaffected by freshets and contains its natural and usual flow.

The bank of a river or stream extends to the margin of the stream, to that point where it comes in contact with the water of the stream.

There is no inconsistency, therefore, in the two calls of a deed, one of which is in effect "to high-water mark of the Kennebec River," and the other, "thence westerly by the bank of the river." As used in the deed they mean exactly the same thing. They are correlative. The one touches the other.

ON REPORT.

The case is stated in the opinion.

*D. D. Stewart,* for plaintiffs.

*S. J. and L. L. Walton,* for defendant.

SITTING: PETERS, C. J., WALTON, EMERY, HASKELL, WISWELL, JJ.

WHITEHOUSE, J., being related to one of the parties, did not sit.

WISWELL, J.    Action of trespass quare clausum. Both parties derive title to their respective and adjoining lots of land from Samuel Weston, who at one time owned all the land in controversy. The lot now owned by the defendant was conveyed by Weston to Asa and Quincy Dyer by deed dated March 6th, 1838; while the plaintiffs' lot was conveyed by the

administrator of Samuel Weston to Judah McClellan, August 28th, 1841. The lot is described as bounded " westerly by land deeded by the late Samuel Weston to A. and Q. Dyer."

The only questions raised are as to the construction of the deed under which the defendant claims.

I. That deed contains this clause : "Saving and reserving from this conveyance, that said Dyers are not to have the right of erecting a building within five feet from the easterly line and within twenty-five feet from my store, and that said five feet is to be forever reserved for a passageway back in common with themselves and others."

Does this language in the deed convey the fee of the five foot strip and reserve a right of way to be used by the grantees in common with others, or does it except from the conveyance the land itself and grant only an easement?

Such construction should be given to a deed, that each part, phrase and word, may have force and effect, that the intention of the parties, if by law it may, shall prevail ; and exceptions from the grant must be construed, in cases of doubt, most strongly against the grantor. *Wellman* v. *Dickey*, 78 Maine, 29.

We have no doubt that the intention of the parties was, that the land should be conveyed and the easement reserved. The description of the premises includes the strip. If the intention had been otherwise, the description would have naturally excluded it and the deed would have contained appropriate language to grant a right of way in addition and as appurtenant to the land conveyed. Moreover, it will be noticed, that the clause quoted contains a provision restricting the grantees from erecting a building on this strip, there could be no object in doing this unless the fee in the soil was conveyed. No excess of caution, however extreme, would cause a grantor in conveying land to put in his deed a clause restricting the grantee from building on other land of the grantor not conveyed, nor from erecting a building upon land of the grantor over which a right of way only was granted.

Although the words "reserving" and "excepting," are so

often used indiscriminately that no controlling effect should be given to the use of one when it is evident that the other was intended, in this case, the language of the deed is technically correct for the purpose of accomplishing that, which is evident, from other parts of the clause, was intended.

An exception in a deed is always a part of the thing granted and of a thing in being, while a reservation is the creation of a right or interest which had no prior existence as such. *Winthrop* v. *Fairbanks*, 41 Maine, 307. In this case the deed provided "that said five feet is to be forever reserved for a passageway," etc.

The language used shows that the five-foot strip is on the grantees' side of the line of the land conveyed; it is the five feet next west "from the easterly line." This necessarily means the easterly line of the lot conveyed.

Our conclusion is supported by the authorities.

In *Stetson* v. *French*, 16 Maine, 204, a deed contained this provision, "reserving and providing for the keeping open and extending to low water Poplar street and Washington street, said streets to be for the future disposition of the parties to this deed in such manner as may hereafter be mutually agreed on by them." These streets were within the limits of the land conveyed. It was held that the fee in the whole land passed by the deed, and that an easement only in this part of it was reserved to the grantor.

In *Tuttle* v. *Walker*, 46 Maine, 280, a deed contained the following reservation, "excepting and reserving as follows, if the town should hereafter lay out and accept a road, from the road first mentioned to the river road, near the house of J. H. Hill, then the south end of the above described premises shall be considered and occupied for the use of the same, three rods wide; and otherwise, reserving the same for a private way forever." It was held, that the deed conveyed the fee of the whole lot of land described therein, subject to an easement for a town way over the three rods, if the town will accept it; and if the town does not use it for that purpose, then for a private way.

In *Kuhn* v. *Farnsworth*, 69 Maine, 404, a deed of warranty,

after describing the exterior lines of the farm conveyed by monuments, courses and distances, continued as follows, "containing one hundred and twenty-five acres and sixty-four rods, and no more, exclusive of the county road four rods wide through the above premises, which is reserved to the said grantor." It was held that the fee in the land contained in the road was not excepted or reserved to the grantor, but passed to the grantee; the easement only being excluded to relieve the warrantor from his covenant against incumbrances.

In *Wellman* v. *Dickey*, 78 Maine, 29, it was decided, that a deed containing these words "excepting the roads laid out over said land" conveys the fee within the limits of the road, subject to the easement of the public incident to the use of the way. In the opinion it is said that this was undoubtedly the intention, "otherwise the locus would naturally have been bounded by the line of the road."

In *Day* v. *Philbrook*, 85 Maine, 90, a deed contained these words: "Reserving the town road leading through the farm." The town road was subsequently discontinued. Held, that the fee of the road was not reserved in the deed but only in its use as an incumbrance.

In *King* v. *Murphy*, 140 Mass. 254, a deed contained a reservation of a strip of land on the westerly side of a lot conveyed, ten feet wide and fifty feet long, "for an open passageway to be used in common by the said Davis and Murphy [grantor and grantee] and their heirs and assigns forever." In the opinion it is said: "The description in the deed to the defendant covers the strip ten feet wide; and we agree with both counsel that the clause of reservation cannot be construed as an exception of this strip, the fee being retained in Davis, but is merely a reservation to him of a right of way over the strip."

The defendant therefore being the owner of the fee in the five-foot strip, this action cannot be maintained for the acts complained of on that portion of the locus, however it might be in an action on the case for a disturbance of the plaintiffs' right to use the same for the purposes of a way.

II. The next question presented involves the construction of

these calls in the deed under which the defendant derived its title, " thence southerly on a line at right angles with said southerly side of said road, to Kennebec river to high-water mark ; thence westerly by the bank of the river or shore thereof to land conveyed by Josiah Parlin and myself to Joseph Leavitt and Osgood Sawyer many years since."

It becomes necessary to inquire into the meaning of the words in the description, "high-water mark," "shore" and "bank" when applied to a non-tidal stream.

The term "high-water mark" although sometimes used, is inappropriate when applied to a fresh water stream where the tide does not flow and ebb. But we think it must be construed as meaning, the line on the river bank reached by the water when the river is ordinarily full and the water ordinarily high. Not the highest point touched by the water in a freshet, nor when the water is the lowest in seasons of drought, but the highest limit reached when the river is unaffected by freshets and contains its natural and usual flow ; the highest limit at the ordinary state of the river. This does not mean, as claimed by the plaintiffs' counsel, the top of the bank, many feet distant from the bed of the river in its ordinary state and only reached by the water on rare occasions of extreme freshet.

In *Plumb* v. *McGannon*, 32 Q. B. 8, (Canada,) it is said : "For the great flow caused by the melting of the snow and ice, and by the spring rains, or by other unusual floods or causes, is to be excluded in determining the limit of high-water mark. The true limit would appear to be, by analogy to tidal waters, the average height of the river after the great flow of the spring has abated and the river is in its ordinary state."

In *Railway Co.* v. *Ramsay*, 53 Ark. 314, (22 Am. St. 195,) it is said : "But it is necessary to a full understanding of the rights of a riparian owner and of the public in the lands between the banks of a river to determine the legal meaning of the phrase high water. It does not mean, as has been sometimes supposed, the line reached by the great annual rises, regardless of the character of the lands subject at such times to be overflowed. But, as decided in the case of *Houghton* v. *C. D. and M.*

*Railway Co.* 47 Iowa, 370, high-water mark, then as the line between the riparian proprietor and the public, is to be regarded as co-ordinate with the limit of the river bed."

The term "shore" is also inapplicable to a non-tidal river. The word strictly means that space which is alternately covered and exposed by the flow and ebb of the tide, the flats between ordinary high and low water mark. The "shore" is the ground between the ordinary high and low-water mark,—the flats,—and a well defined monument. *Montgomery* v. *Reed*, 69 Maine, 510.

A fresh water river has banks instead of shores, but the word is sometimes used with reference to a non-tidal river, synonymously with bank. The bank of a river or stream extends to the margin of the stream, to that point where the bank comes in contact with the stream. Gould on Waters, § 41, and cases cited in note.

In *Stone* v. *Augusta*, 46 Maine, 127, two of the calls in a deed were, "thence southerly and westerly, parallel with north line of said Lot No. 10, to the Mill Brook; thence by the bank of said brook to the north line of said lot No. 10." The court said in the opinion : "The plaintiff's land is, therefore, bounded by ordinary high-water mark, and this principle will not be changed by the fact that the land or bank continues to rise more or less precipitously above that point. His land is not limited to the top of the hill or bank beside the stream, but extends to the margin of the stream, to that point where the bank comes in contact with the stream."

In *Starr* v. *Child*, 20 Wend. 149, it is said : "The bank and the water are correlative. You cannot own one without touching the other." In that case it was decided, that, where in a conveyance of premises situated on the bank of a stream not navigable, the lines are stated to run from one of the corners of the lot to the river, and thence along the shore of said river to a certain street, the grantee takes to the thread of the stream. And although this decision was reversed by the Court of Errors of New York in *Child* v. *Starr*, 4 Hill, 369, in the latter case a similar definition of the bank of a river was given.

While it has often been held that the bank of a river includes

to low water mark, we think that in this case at least, by reason of the other calls, it should be limited to ordinary high-water mark. And as high-water mark is not at the top of a bank reached only by the water of the river in extreme freshets, neither does a call "thence by the bank" limit the grant to the top of the hill or a bank beside the stream, but extends it to the margin of the stream or river.

There is no inconsistency, therefore, in the two calls of the deed one of which is in effect to high water mark of the Kennebec river, and the other," thence westerly by the bank of the river." As used in this deed they mean exactly the same thing. They are correlative. The one touches the other.

The southerly boundary, then, of the defendant's land, is at high-water mark of the river, when the river is unaffected by freshets and is in its ordinary state, and where the bank touches the water when the river is in this condition.

To ascertain just where this would be in any case may be a matter of some difficulty. It may be the line which the river impresses upon the soil by covering it for sufficient periods to deprive it of vegetation and to destroy its value for agriculture. Gould on Waters, § 45 ; *Railway Co.* v. *Ramsay*, supra:

In other cases where the conditions are not favorable for such a line of demarkation to be made by natural causes, it can only be ascertained by careful observation.

In this case we can do no more than to give the general principles and rules which will control in ascertaining where high-water mark, as above defined, is. We cannot from the evidence before us definitely and accurately locate it.

But it is evident that the acts complained of as trespasses were committed above ordinary high-water mark, and we do not understand that it is claimed by the counsel for the plaintiffs that any of these acts were done below the place where the line as above indicated would fall.

In accordance with the terms of the report, therefore, the entry will be,

*Judgment for defendant.*